In the Matter of MICHAEL CROCCO, Petitioner, v WILLIAM G. BARRY et al., Individually and as Members of the New York State Racing and Wagering Board, Respondents.

First Department, November 29, 1977

APPEARANCES OF COUNSEL

*Herbert W. Sterenfeld* of counsel *(Sterenfeld & Sterenfeld,* attorneys), for petitioner.

*Kevin McKay* of counsel *(Samuel A. Hirshowitz, J. Trubee Miller* and *Paul E. Dahlman* with him on the brief; *Louis J. Lefkowitz, Attorney-General),* for respondents.

### OPINION OF THE COURT

*Per Curiam.*

 Respondent New York State Racing and Wagering Board authorized the running of a pari-mutuel stake race, called Empire State Trot No. 2, to be held as part of a week-long meeting at the Syracuse Fairgrounds in August, 1976. A similar race had been run in the year preceding. Such races are ordinarily conducted pursuant to 9 NYCRR Part 4100, applicable to harness racing. The ordinary rule (§ 4112.2) requires that, when the declaration box, in which are filed

entries for this type of race, is opened and the number of entrants is found to exceed 13, the field is divided into two separate heats called "dashes," apparently to avoid overcrowding. Because the Syracuse track is longer than that ordinarily used for harness racing, a so-called condition was purported to have been adopted for this race, which provided, that the division into more than one dash would not take place unless a minimum of 18 horses was entered. Petitioner, learning during the process of declaring his horse as an entrant that 14 entries had been found in the box, demanded a division into two dashes. When the demand was rejected by the racing secretary on the basis of the superseding condition for the race, he protested to Dailey, the board's "administrative steward," that the condition had been adopted illegally by Dailey, and not by the board (§ 411.23 [a]). Petitioner's protest was overruled; nevertheless, he paid the entry fees of $17,000. His protest continued viable and, when his horse failed to finish in the money, the protest was formally disallowed after a hearing before the board. Prior to the hearing, a stipulation, from which the foregoing statements of fact have been derived, was entered into. It constitutes the entire relevant record, the taking of evidence at the hearing having been concerned solely with matters we have found to be irrelevant. On the basis of the regulations and the stipulation, we find that, though the *board* had the authority to change the rule, the condition which was substituted for the division rule was never legally adopted, and the protest should have been sustained.

The stipulation recites: "9. At no time were the proposed conditions for the 'Empire Trot' ever considered at a Racing and Wagering Board meeting, or approved by the Board Members. The only approval being given by John Dailey." Dailey, Administrative Steward of the Board, was not its executive officer, but solely the board's adviser in harness activities, who exercised administrative supervision over lesser officials, and carried out any special duty assigned by his superiors (§ 4105.2). He was entirely without authority to change the rule himself, and the board never did so. Indeed, he testified that he "assumed the authority" and the board has evolved a theory of "implied ratification" of his act, though no conduct is pointed to which bears out such a theory.

The stipulation continues:

"10. In June of 1974, there was in force and effect, Rules and Regulations of Harness Racing promulgated by the New York State Racing and Wagering Board.

"11. In particular, Rules 91.23 and 92.2 were in force and effect during said period. (Renumbered 4111.23 and 4112.2 respectively on 9/5/74)."

Thus, it is plain that, the new rule never having been adopted, petitioner was correct in his demand that there be division into two heats when 14 declarants' entries were found in the box.

Respondent advances several defenses, found to be without merit, and which were the subject of the testimony added to the stipulation. It is claimed, and not denied, that petitioner knew of the changed rule when he paid his entry fees. This is not a defense to the charge of illegality. It is also claimed that Dailey had, when the protest was made, offered to allow petitioner to withdraw his entry and have his fees returned. Not alone is this not a defense, but here again Dailey exceeded his authority in making the offer, for permission to withdraw in such circumstances may be granted only by the presiding judge of the meeting (§§ 4105.5, 4105.6, and 4111.13). It is claimed that, had his horse won, petitioner would not have pressed his claim further. This is obvious; winners do not sue. But this states no defense. Further, that, since one horse was taken out of the race for misconduct on the track, reducing the starting field to 13, petitioner had not been injured. But his right to a valid race accrued when the declaration box was opened, and was not vitiated by later events.

We conclude that, not alone was the board's decision against the weight of substantial evidence, but the race having been run in violation of the board's own rules, the determination was arbitrary and capricious, and the race a nullity. Unfortunately, and for obvious reasons, it cannot be rerun. All that can be done is to restore the entrants to their prior status.

The determination of respondent board rejecting petitioner's protest should be annulled, on the law, and the matter remanded to respondent board with a direction to sustain the protest, declare the race a nullity, and take steps to return all entry fees to each participant, without costs.

### ADDENDUM

We have been given pause by a development since argu-

ment herein. Within a few days thereafter, we received a letter from the Attorney-General advising of the receipt of information from respondent board's counsel that, "pursuant to an order of the Erie County Supreme Court issued in June 1977 in the case of *Gerry, et al. v. Buffalo Trotting Assoc. Inc.,* the purse money of the challenged race has been distributed." It is not stated whether this proceeding is thereby rendered moot. It appears from the accompanying papers that plaintiffs in that action were the owners of the five winning horses in the subject race, and defendant was the licensee of the board which conducted the week-long meeting at Syracuse at which the race was held; suit was for distribution of the purse money, held, up to that time, in a special bank account "awaiting decision by the Board (stipulation herein, item 28)." Accompanying the Attorney-General's letter was a copy of the memorandum decision of Supreme Court, Special Term, Erie County, dated May 4, 1977, denying the defendant licensee's motion to dismiss or for a stay pending disposition of the instant proceeding and granting the cross motion of the plaintiffs owners for summary judgment for the amount of the purse. Also enclosed were copies of the order implementing the decision, signed May 16 and apparently entered May 19 (though curiously bearing in its preamble the date of April 18, actually the date of argument), and the judgment entered thereon on an unspecified date in June.

Petitioner's counsel has filed a letter objecting to receipt of the submitted papers. No application was made to us for permission to submit them. We do receive them as part of the file but consider them completely irrelevant to what is before us to decide. Certainly, the Erie County decision is in no way dispositive of our case. There is no indication in what we have received as to any attempt to interplead in that action either of the parties herein, nor is there any indication of an attempt by either party herein to intervene in the other case. In any event, this court was uninformed as to the existence of the other action until receipt of the letter. Nor are we told whether our petitioner knew of the other action.

■ ■ We are moved to comment only that it would have served the cause of judicial economy for disposition of the other case to have awaited the outcome of the proceeding before us, of which the Erie Special Term stated it was aware. It seems that the issues decided by us are basic to an appropriate disposition of the other case. Thus, it appears strange that

the Erie County plaintiffs should enjoy the fruits of a race that we find to have been a nullity. However, not being engaged in juridical competition, we leave it to petitioner to fashion and pursue an appropriate remedy by which he may be able to achieve the full benefit of the judgment we grant.

LUPIANO, J. P., EVANS, CAPOZZOLI and MARKEWICH, JJ., concur.

Determination of respondent board dated January 18, 1977, unanimously annulled, on the law, and the matter remanded to respondent board with a direction to sustain the protest, declare the race a nullity, and take steps to return all entry fees to each participant, without costs and without disbursements.